**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

COMMODITY FUTURES TRADING
COMMISSION,

           Plaintiff,

     v.

TALLINEX a/k/a TALLINEX LIMITED
and
GENERAL TRADER FULFILLMENT,

           Defendants.

CIVIL ACTION NO.:

COMPLAINT FOR PERMANENT
INJUNCTION, CIVIL MONETARY
PENALTIES, AND OTHER ANCILLARY
AND EQUITABLE RELIEF

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, alleges as follows:

## I.    SUMMARY

1.    On October 18, 2010, the CFTC adopted new regulations implementing certain provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank") with respect to the offer and sale of off-exchange foreign currency ("forex") transactions and the need for entities marketing such transactions to register with the Commission.  Pursuant to Section 2(c)(2)(C)(iii)(I)(aa) of the Commodity Exchange Act ("the Act") 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa)(2012), and Commission Regulation ("Regulation") 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i)(2016), an entity must be registered with the Commission as a retail foreign exchange dealer ("RFED") if, with certain exceptions not applicable here, it solicits or accepts orders for leveraged, margined or financed forex transactions from persons who are not eligible contract participants ("non-ECPs" or "retail customers") to which it is or offers to be the counterparty.

2.      Beginning in at least September 2012 and continuing to at least September 2016 (the "relevant period"), Defendant Tallinex a/k/a Tallinex Limited ("Tallinex"), an off-shore Estonian company, has solicited or accepted orders from non-ECPs located in the United States in connection with leveraged or margined forex transactions, to which it is or offers to be the counterparty, without being registered with the CFTC as an RFED, in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act and Regulation 5.3(a)(6)(i).  To date, Tallinex has solicited and accepted at least $1.5 million from U.S. customers.

3.      Further, in the course of soliciting retail forex customers, Tallinex made fraudulent misrepresentations and omissions of material fact and engaged in fraudulent and deceptive business practices, in violation of Sections 4b(a)(2)(A) and (C) and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A) and (C) and 9(1) of the Act (2012), and Regulations 5.2(b)(1) and (3), 5.5 and 180.1, 17. C.F.R. §§ 5.2(b)(1) and (3), 5.5 and 180.1 (2016).

4.      Also during the relevant period, Defendant General Trader Fulfillment ("GTF") has operated as an introducing broker ("IB") without being registered with the Commission in violation of Section 4d(g) of the Act, 7 U.S.C. § 6d(g) (2012), and Regulation 5.1(f)(1), 17 C.F.R. § 5.1(f)(1) (2016), by soliciting and accepting, on behalf of Tallinex, orders for retail forex transactions from U.S. resident non-ECP customers.

5.      By virtue of this conduct and the further conduct described herein, Defendants Tallinex and GTF (collectively "Defendants") have engaged, are engaging, or are about to engage in acts and practices in violation of the Act and the Regulations.

6.      Accordingly, pursuant to Sections 2(c)(2) and 6c of the Act, 7 U.S.C. §§ 2(c)(2) and 13a-1 (2012), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and the Regulations, and to further enjoin

Defendants from engaging in certain activity, including, soliciting or accepting orders for forex transactions from non-ECP U.S. customers and offering to be the counterparty to customers' forex transactions, without being registered with the Commission.

7.     In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, disgorgement, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

8.     Unless restrained and enjoined by this Court, Defendants likely will continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.     JURISDICTION AND VENUE

9.     Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

10.    The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Sections 2(c)(2) and 6c of the Act, 7 U.S.C. §§ 2(c)(2) and 13a-1.

11.    Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants transact business in this District and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

## III.     PARTIES

12.    Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq.* (2012), and the Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2016)

13.     Defendant **Tallinex a/k/a Tallinex Limited** is an Estonian company licensed to do business in St. Vincent and the Grenadines.  It uses as a business address The Jaycees Building Stoney Ground, P.O .Box 362, Kingstown VC0100, St Vincent and the Grenadines, and also purports to have a business address in Estonia of Tornimae tn5, Kesklinna Iinnaosa, Tallina linn, Harju Maarkond 10145.  Tallinex has never been registered with the Commission in any capacity.

14.     Defendant **General Trader Fulfillment** is a Nevada Corporation that uses as a business address 521 W. Center St, Pleasant Grove, UT 84062.  GTF has never been registered with the Commission in any capacity.

## IV.     <u>STATUTORY BACKGROUND</u>

**Forex Registration Provisions of the Act**

15.     Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C.§§ 2(c)(2)(C)(iii)(I)(aa), prohibits any person, unless registered with the Commission in such capacity as the Commission by rule, regulation or order shall determine, from soliciting and accepting from retail customers orders for transactions in foreign currency (forex) offered on a leveraged or margined basis that do not result in actual delivery and do not create an enforceable obligation to deliver between a seller and a buyer who have the ability to deliver and accept delivery.

16.     Section 4d(g) of the Act, 7 U.S.C § 6d(g), prohibits any person from operating as an IB unless registered as such with the Commission.

17.     Regulations 5.1(h)(1) and 5.3(a)(6)(i), 17 C.F.R. §§ 5.1(h)(1) and 5.3(a)(6)(i), provide that any person that solicits and accepts from retail customers orders for transactions in foreign currency and who is or offers to be the counterparty to such retail forex transactions, must register with the Commission as an RFED.

18.     Regulations 5.3(a)(5)(i) and 5.1(f)(1), 17 C.F.R. §§ 5.3(a)(5)(i) and 5.1(f)(1), provide that any person that solicits or accepts orders from retail forex customers must register with the Commission as an IB.

19.     The Act defines an ECP, in relevant part, as an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual."  Section 1a(18)(xi) of the Act; 7 U.S.C. § 1a(18)(xi).  Individuals who do not meet these criteria are non-ECPs.  Tallinex's customers are typically non-ECPs – *i.e*., retail customers.

**Anti-Fraud Provisions of the Act**

20.     Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A) and (C), in relevant part, make it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for, on behalf of, or with any other person, other than on or subject to the rules of a designated contract market: (A) to cheat or defraud or attempt to cheat or defraud the other person; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contact for, on behalf of, or with the other person.

21.     Section 6(c)(1) of the Act, 7 U.S.C. § 9(c)(1), in relevant part, prohibits any person from directly or indirectly using or employing, in connection with any contract of sale of any commodity in interstate commerce, any manipulative, deceptive device or contrivance in contravention of such rules and regulations as the Commission shall promulgate.  Pursuant to Section 6(c)(1) of the Act, the Commission promulgated Regulation 180.1, which, together,

broadly prohibit any person, directly or indirectly, in connection with any swap, contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or, (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

22.     Section 2(c)(2)(C)(ii)(1) of the Act, 7 U.S.C.§ 2(c)(2)(C)(ii)(1), makes Sections 4b(a) and 6(c)(1) applicable to retail forex transactions.

23.     Regulations 5.2(b)(1) and (3), 17 C.F.R. §§ 5.2(b)(1) and (3), prohibit any person from using the mails or any means or instrumentalities of interstate commerce directly or indirectly, to (1) cheat or defraud or attempt to cheat or defraud the other person; or (3) willfully to deceive or attempt to deceive the other person by any means whatsoever in connection or with retail forex transactions.

**Mandatory Disclosure Statement to Retail Forex Customers**

24.     Regulation 5.5, 17 C.F.R. § 5.5, prohibits RFEDs from opening a retail forex account unless they first furnish customers with a written disclosure statement that provides certain mandated information specified in Regulation 5.5 concerning forex trading and receive back from the customer a signed acknowledgment that the customer received and understood the disclosure statement.  Tallinex does not provide this disclosure statement to all of its U.S. retail forex customers.

V.

FACTS

A.    Tallinex's Operations

25.    Tallinex operates a website at www.tallinex.com and also operates an introducing broker program whereby companies, such as GTF, introduce forex trading accounts to Tallinex and receive commissions on revenue generated by the accounts' trading activity.

26.    At least during the relevant time period, Tallinex solicited and accepted funds and orders from non-ECP, U.S. resident customers to trade leveraged forex contracts.

27.    Customers can open trading accounts by submitting information online through Tallinex's website.  During the relevant period, the Tallinex website, in the frequently asked questions section, stated, "Tallinex welcomes residents of the U.S. . . . and provides them with the same leverage and hedging facilities as non-U.S. . . . residents."  Further, Tallinex's online application contains a drop down menu for the applicant to select his or her "country" and the U.S. is one of the choices.  The online application also allows a customer to select a currency for his or her account, and one of the two available currencies is the U.S. dollar.

28.    In or around September 2016, Tallinex changed its website to state that it does not accept U.S. customers.  However, on information and belief, Tallinex still solicits and accepts funds from U.S. customers.

29.    Tallinex's online application does not solicit information concerning whether prospective customers are ECPs and it fails to inquire whether a prospective customer has the ability or the business need to accept foreign currency into his or her bank account.  Tallinex permits customers to open forex trading accounts with a minimum initial deposit of 100 EUR/USD.  Tallinex's website states that its ECN-Micro account is "designed for traders new to the [f]orex market, and those needing to trade smaller volumes."

30.     Tallinex determines the "spread" for the forex contracts it offers to customers. Tallinex offers its customers variable spreads averaging between 0.5 and 2.5 pips (the measuring mechanism for price changes in forex contracts per contract such as EUR/USD (Euros versus U.S. dollars).  Tallinex therefore acts as the counterparty to its customers' contract.

31.     Tallinex offers its non-ECP customers forex contracts with leverage of up to 1:1000.  This means that a customer can increase its trading position by buying or selling up to 1000 times the amount of funds he or she has invested.  Thus, for example, a Tallinex customer may trade up to $1,000,000 notional value in foreign currencies with a $1,000 deposit, and a customer with $10,000 invested may trade up to $10,000,000 in foreign currencies.  This spectacularly high degree of leverage means that even a small price movement can produce large losses in relation to the customer's initial deposit and can result in customers rapidly losing their funds and being unable to ever recover from a losing trade.

32.     Tallinex's online account application does not require that the customer state whether or not the customer has the ability to deliver and accept delivery in connection with the customer's lines of business, which is one of the prerequisites to qualify as an ECP.  In fact, with forex accounts being offered for as little as 100EUR/USD, Tallinex is specifically soliciting customers that typically could never qualify as ECPs.

33.     Tallinex's forex contracts neither result in delivery within two days nor create an enforceable obligation to deliver between a seller and a buyer who have the ability to deliver and accept delivery, respectively, in connection with their lines of business.  Rather, these forex contracts are ultimately offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

**B.      Tallinex's Solicitation Fraud**

34.     Defendant Tallinex fraudulently solicits U.S. retail forex customers by making false and misleading misrepresentations of material fact and omitting material information, including but not limited to: (a) falsely representing that Tallinex is lawfully doing business in the United States; (b) misrepresenting and omitting the likelihood of profit and risk of loss involved in trading their forex contracts; (c) falsely and misleadingly representing the safety of customer funds in the event of Tallinex's financial collapse (*i.e.*, counterparty risk).

35.     Defendant Tallinex made these false and misleading misrepresentations of material fact and omitted material information during the relevant period on its website, in correspondence and discussions with retail forex customers, and in social media sites available to the general public, among other places.

36.     Defendant Tallinex has falsely represented to U.S. customers that it is lawfully doing business in the U.S. by using at least one domestic IB, GTF, to solicit U.S. customer accounts on Tallinex's behalf, by stating on its website that it "welcomes residents of the U.S."

37.     Further, in the course of soliciting U.S. customers, Tallinex misrepresents and omits material facts regarding the likelihood of profit and the risk of loss associated with trading Tallinex's forex contracts.

38.     Specifically Tallinex's website represents that money managers who trade its forex contacts for customers made purported profits of 162.29% in a little over a year [and] up to 1301.10% in a little over a two-year period.  Tallinex promotes these extraordinary profits to create the misleading impression that forex investments made with it are likely to be profitable for the specific purpose of increasing its number of customer accounts.  However, the website fails to disclose the likelihood of profits and risk of loss in trading its forex contracts.  For example, it does not disclose the percentages of retail forex accounts that are profitable and not

profitable.  By acting as an RFED, Tallinex has a duty to disclose this information under Regulation 5.5 in order to give a balanced and realistic view of the results of trading its forex contracts.

39.     Tallinex also does not provide all customers with a risk disclosure statement that warns customers of the risk of rapid losses using leveraged trading.  By acting as an RFED, Tallinex has a duty to disclose this information under Regulation 5.5 in order to give a balanced and realistic view of the results of trading its forex contracts with leverage.

40.     Tallinex has knowingly or recklessly made these material misrepresentations and omissions.  Tallinex has actual profit and loss history in its possession, but failed to disclose this balanced information to customers and potential custormers while touting extraordinary profits, including profits of between 162.29% and 1301.10%.  Accordingly, Tallinex made these misrepresentations knowingly or recklessly.

41.     Tallinex also misrepresents to customers that their funds are segregated, suggesting that customers are protected from risk events such as Tallinex's financial collapse. This representation, which Tallinex posts on its website, is false.  On information and belief, Tallinex does not maintain client funds separate from company funds, and in the event of Tallinex's default or bankruptcy customers' funds would be lost.

42.     In fact, the written disclosure statement prescribed in Regulation 5.5 warns that RFEDs must state that the RFED may commingle customer funds with the RFED's own operating funds, use them for other purposes, and in the event of the RFED's bankruptcy any funds the RFED is holding for the customer, including any amounts owed to the customer, may be treated as an unsecured creditor's claim even if the customer accounts are segregated.

C.      **GTF's Operations**

43.     GTF solicits U.S. customers to open forex trading accounts at Tallinex as part of Tallinex's "Introducing Broker Program."

44.     GTF solicits these U.S. customers through a network of salespersons that develop websites that promote GTF.  These salespersons also place promotional material in web-based classified ad companies.  GTF claims in its promotional material, and to customers who express an interest in opening a forex account, to have a proprietary trading system that, if its recommendations are followed, would result in profitable forex trading.

45.     When a customer contacts GTF to trade forex, GTF typically provides the customer with a "coach," who is a paid member of GTF, and who GTF claims will teach the customer how to trade forex profitably using a hypothetical account.

46.     After the GTF "coach" and the customer complete hypothetical trading sessions, GTF staff, including but not limited to the GTF "coaches," refer the customer to Tallinex to open a live forex account to begin trading.

47.     GTF receives commissions for introducing customers to Tallinex to open forex accounts and receives commissions on the revenue generated by the customers' trading.

48.     Since approximately September 2012, GTF has referred at least thirty U.S. customers who opened forex trading accounts at Tallinex.

## VI.

## VIOLATIONS OF THE COMMODITY EXCHANGE ACT

**COUNT ONE:**
**VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(aa) OF THE ACT, and**
**COMMISSION REGULATION 5.3(a)(6)(i)**
**Operating As an Unregistered Foreign Exchange Dealer**

49.     Paragraphs 1 through 48 are realleged and incorporated herein.

50.    Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), prohibits any person or entity from soliciting or accepting from non-ECPs, orders for leveraged or margined forex transactions if such person or entity is not registered in such capacity as the Commission shall determine.

51.    Pursuant to Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i), persons or entities who offer to be or are the counterparty to leveraged or margined forex transactions with U.S. customers who are non-ECPs, are required to be registered with the Commission as retail foreign exchange dealers.

52.    Since at least September 2012 to at least September 2016, Tallinex solicited or accepted orders from U.S. resident non-ECPs in connection with leveraged or margined forex transactions and is or offers to be the counterparty to the forex transactions.  Tallinex engages in this conduct without being registered as an RFED.  By this conduct, Tallinex is violating Section 2(c)(2)(C)(iii)(I)(aa) of the Act and Regulation 5.3(a)(6)(i).

53.    Each instance that Tallinex engaged in this conduct since at least September 2012 to at least September 2016 is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act and Regulation 5.3(a)(6)(i).

**COUNT TWO:**
**VIOLATION OF SECTIONS 4b(a)(2)(A) and (C) OF THE ACT, and**
**COMMISSION REGULATIONS 5.2(b)(1) and (3)**
**Fraud by Misrepresentations and Omissions of Material Fact**

54.    Paragraphs 1 through 48 are realleged and incorporated herein by reference.

55.    Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A) and (C), in relevant part, make it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for, on behalf of, or with any other person, other than on or subject to the rules of a designated

contract market to cheat or defraud or attempt to cheat or defraud the other person or willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contact for, on behalf of, or with the other person.

56.     Regulations 5.2(b)(1) and (3), 17 C.F.R. §§ 5.2(b)(1) and (3), prohibit any person from using the mails or any means or instrumentalities of interstate commerce directly or indirectly, to cheat or defraud or attempt to cheat or defraud the other person willfully to deceive or attempt to deceive the other person by any means whatsoever in connection or with retail forex transactions.

57.     As set forth above, Defendant Tallinex cheated, defrauded or willfully deceived, and attempted to cheat, defraud or willfully deceive U.S. retail forex customers by, among other fraudulent and deceptive acts and practices, knowingly or recklessly misrepresenting or omitting material facts including but not limited to, (a) falsely representing that Tallinex is lawfully doing business in the United States; (b) misrepresenting and omitting the likelihood of profit and risk of loss involved in trading forex contracts; (c) falsely and misleadingly representing that customer funds are segregated and protected in the event of Tallinex's financial collapse.  By these actions, Defendant Tallinex violated Sections 4b(a)(2)(A) and (C) of the Act and Regulations 5.2(b)(1) and (3).

58.     Each fraudulent and deceptive act and each misrepresentation or omission of material fact during all relevant times, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(2)(A) and (C) of the Act and Regulations 5.2(b)(1) and (3).

**COUNT THREE:**
**VIOLATION OF SECTION 6(c)(1) OF THE ACT, and**
**COMMISSION REGULATION 180.1**
**Fraud by Use of a Manipulative Device, Scheme, Artifice or Course of Business**

59.     Paragraphs 1 through 48 are realleged and incorporated herein by reference.

60.     Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), makes it unlawful for any person, directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, intentionally or recklessly: (1) use or employ, or attempt to use or employ, manipulative devices, schemes, or artifices to defraud; (2) make, or attempt to make, untrue or misleading statements of a material fact or omit to state material facts necessary in order to make the statements made not untrue or misleading; or (3) engage, or attempt to engage, in acts, practices, or courses of business, which operate or would  operate as a fraud or deceit upon customers or prospective customers.

61.     Commission Regulation 180.1, 17 C.F.R. § 180.1, provides, in relevant part, that it shall be unlawful for any person, directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly (A) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (B) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (C) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

62.     By falsely representing that Tallinex was lawfully doing business in the United States; misrepresenting and omitting the likelihood of profit and risk of loss involved in trading

their forex contracts; falsely and misleadingly representing the safety of customer funds in the event of Tallinex's financial collapse among other fraudulent and deceptive acts and practices, Defendant Tallinex, directly or indirectly, in connection with contracts of sale of commodities in interstate commerce, contracts for future delivery on or subject to the rules of a registered entity, intentionally or recklessly: (1) used or employed, or attempted to use or employ, manipulative devices, schemes, or artifices to defraud; (2) made, or attempted to make, untrue or misleading statements of material fact or omitted to state material facts necessary in order to make the statements made not untrue or misleading; or (3) engaged, or attempted to engage, in acts, practices, or courses of business, which operated or would have operated as a fraud or deceit upon customers or prospective customers.

63.     Each use or employment, or attempted use or employment, of any manipulative device, scheme, or artifice to defraud, and each untrue or misleading statement of a material fact made or attempted to be made, each omission of material fact, and each act, practice, or course of business or attempt to engage in an act, practice or course of business which operated or would have operated as a fraud or deceit upon any person is alleged as a separate and distinct violation of Section 6(c)(1) of the Act and Rule 180.1.

**COUNT FOUR:**
**VIOLATION OF COMMISSION REGULATION 5.5**
**Failure to Provide Disclosure Statement**

64.     Paragraphs 1 - 48 are realleged and incorporated herein.

65.     Regulation 5.5, 17 C.F.R. § 5.5, prohibits RFEDs from opening any forex account for retail customer unless the RFED first provides the customer with a written disclosure statement that includes the following information:

(a)     for each of the most recent four calendar quarters during which the counterparty maintained retail forex acounts:

(i)     the total number of non- discretionary retail forex customer accounts maintained by the retail foreign exchange dealer;

(ii)    the percentage of accounts that were profitable during the equarter; and

(iii)   the percentage of such accounts that were not profitable during the quarter.

(b)     a Risk Disclosure Statement warning of the financial losses that can inccur using leverage, conflicts of interests and other risks.  Specifically, RFEDs must disclose in writing, in all capital letters, that:

(i)     the RFED's trading is not on a regulated market or exchange and customers' funds have no regulatory protection;

(ii)    because of leverage and other risks, customers can rapidly lose all of their funds;

(iii)   the RFED, if serving as the counterparty, has a direct financial conflict of interest with the customer because when the customer loses money trading, the counterparty dealer is making money on such trades;

(iv)    the RFED may commingle customers' funds with its own operating funds or use them for other purposes; and

(v)     in the event that the RFED becomes bankrupt, funds the dealer is holding for customers, in addition to funds owed to customers whether or not any assets are maintained in separate deposit accounts by the dealer, may be treated as an unsecured creditor's claim.

66.     Regulation 5.5 also requires that the RFED receives back from the retail forex customer a signed and dated acknowledgement that the customer received and understood the disclosure statement.

67.     Tallinex typically did not provide its U.S. retail forex customers with a disclosure statement that comports with these requirements.  Therefore, Tallinex violated Regulation 5.5.

68.     Each retail forex account that Tallinex opened without providing customers with a written disclosure statement that includes the information set forth in paragraphs 65-67 above, is alleged as a separate and distinct violation of Regulation 5.5.

**COUNT FIVE:**

**VIOLATION OF SECTION 4d(g) OF THE ACT, and**
**COMMISSION REGULATION 5.3(a)(5)(i)**
**Operating As an Unregistered Introducing Broker**

69.     Paragraphs 1 through 48 are realleged and incorporated herein.

70.     Section 4d(g) of the Act, 7 U.S.C. § 6d(g), and Regulation 5.3(a)(5)(i), 17 C.F.R.

§ 5.3(a)(5)(i), prohibit any person from operating as an IB unless such person is registered with

the Commission as such.

71.     Pursuant to Regulation 5.3(a)(5)(i), 17 C.F.R. § 5.3(a)(5)(i), an IB for purposes of

foreign currency transactions is any person who solicits or accepts orders from non-ECP

customers in connection with retail forex transactions.

72.     By soliciting and accepting customer orders for leveraged forex trading opened at

Tallinex, while unregistered, GTF violated Section 4d(g) of the Act, and Regulation 5.3(a)(5)(i).

73.     Each day that GTF engaged in this conduct from at least September 2012 to at

least September 2016 is alleged as a separate and distinct violation of Section 4d(g) of the Act,

and Regulation 5.3(a)(5)(i).

**VII.**

**RELIEF REQUESTED**

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by

Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers,

enter:

A.     A finding that Defendant Tallinex violated Sections 2(c)(2)(C)(iii)(I)(aa),

        4b(a)(2)(A) and (C), and 6(c)(1) of the Act, 7 U.S.C §§ 2(c)(2)(C)(iii)(I)(aa),

6b(a)(2)(A) and (C), and 9(1), and Commission Regulations 5.2(b)(1) and (3), 5.5 and 180.1, 17 C.F.R. §§ 5.2(b)(1) and (3), 5.5 and 180.1.

B.     A finding that Defendant GTF violated Section 4d(g) of the Act, 7 U.S.C. § 6d(g) and Commission Regulation 5.3(a)(5)(i), 17 C.F.R. § 5.3(a)(5)(i).

C.     An order of permanent injunction prohibiting Defendant Tallinex and any other person or entity associated with it, from engaging in conduct that violates Sections 2(c)(2)(C)(iii)(I)(aa), 4b(a)(2)(A) and (C), and 6(c)(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), 6b(a)(2)(A) and (C), and 9(1), and Commission Regulations 5.2(b)(1) and (3), 5.5 and 180.1, 17 C.F.R. §§ 5.2(b)(1) and (3), 5.5 and 180.1.

D.     An order of permanent injunction prohibiting Defendant GTF and any other person or entity associated with it, from engaging in conduct that violates Section 4d(g) of the Act, 7 U.S.C. § 6d(g) and Commission Regulation 5.3(a)(5)(i), 17 C.F.R. § 5.3(a)(5)(i).

E.     An order of permanent injunction prohibiting Defendants and any successor thereof, from, directly or indirectly:

     a.     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2016);

     b.     entering into any transactions involving commodity interests (as that term is defined in Regulation 1.3 (yy), 17 C.F.R. § 1.3(yy) (2016);

     c.     having any commodity interests traded on their behalf;

     d.     controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

     e.     soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

      f.      applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and

      g.      acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a), agent, or any other officer or employee of any person or entity registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. §4.14(a)(9).

F.      An order requiring that Defendants, as well as any of their successors, disgorge to any officer appointed or directed by the Court all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices that constitute violations of the Act, as amended, and the Regulations, including pre and post-judgment interest;

G.      An order directing Defendants, as well as any successors thereof, to make full restitution, pursuant to such procedure as the Court may order, to every person or entity whose funds Defendants received, or caused another person or entity to receive, as a result of the acts and practices constituting violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations; and

H.      An order requiring Defendants to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts the greater of: (1) $170,472 for each violation of the Act and Regulations or (2) triple their monetary gain.

I.      An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

J.      Such further relief as this Court may deem necessary and appropriate.


Dated:  May 30, 2017                              Respectfully submitted,

                                                  U.S. COMMODITY FUTURES
                                                  TRADING COMMISSION
                                                  525 West Monroe Street, Suite 1100
                                                  Chicago, IL 60661
                                                  (312) 596-0700
                                                  (312) 596-0714 (facsimile)

                                                  /s/ Camille M. Arnold
                                                  Camille M. Arnold
                                                  Senior Trial Attorney
                                                  (312) 596-0524
                                                  carnold@cftc.gov


                                                  /s/ David Terrell
                                                  David Terrell
                                                  Chief Trial Attorney
                                                  (312) 596-0546
                                                  dterrell@cftc.gov


                                                  /s/ Scott Williamson
                                                  Scott Williamson
                                                  Deputy Regional Counsel
                                                  (312) 596- 0560
                                                  swilliamson@cftc.gov


                                                  /s/ Rosemary Hollinger
                                                  Rosemary Hollinger
                                                  Regional Counsel
                                                  (312) 596-0520
                                                  rhollinger@cftc.gov