Camille M. Arnold - A2505907 NY (Admitted Pro Hac Vice)
Diane Romaniuk - 0341649 IL (Admitted Pro Hac Vice)
David Terrell - 6196293 IL (Admitted Pro Hac Vice)
Attorneys for the Commodity Futures Trading Commission
525 West Monroe Street
Suite 1100
Chicago, Illinois 60661
(312) 596-0524 (Arnold)
(312) 596-0541 (Romaniuk)
(312) 596-0539 (Terrell)

carnold@cftc.gov
dromaniuk@cftc.gov
dterrell@cftc.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| United States Commodity Futures Trading Commission,<br><br>Plaintiff,<br><br>v.<br><br>Tallinex a/k/a Tallinex, Ltd. and General Trader Fulfillment,<br><br>Defendants. | **PLAINTIFF COMMODITY FUTURES TRADING COMMISSION'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT TALLINEX a/k/a TALLINEX, LTD.**<br><br>Case No. 2:17 cv 00483<br><br>District Judge David Nuffer |

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ..................................................................................................... 1

III. PROCEDURAL HISTORY ....................................................................................... 3

   A. Tallinex's Operations ........................................................................................ 3

   B. Tallinex's Fraud ............................................................................................... 5

   C. Tallinex Failed to Provide Customers with a Mandated Risk Disclosure Statement ........ 6

V.   LEGAL ARGUMENT ............................................................................................. 7

   A. Jurisdiction and Venue Are Proper .................................................................... 7

   B. Entry of Default Judgment is Proper .................................................................. 7

   C. Defendant Tallinex Violated the Commodity Exchange Act .................................. 8

      1.   Defendant Tallinex Solicited and Accepted Forex Transactions from
         Non-ECPs Without Being Registered with the Commission in Violation
         of  Section 2(c)(2)(C)(iii)(I)(aa) of the Act and Commission
         Regulation 5.3(a)(6)(i) .................................................................................. 8

      2.   Defendant Tallinex Violated Sections 4b(a)(2)(A) and (C) of the Act
         and Commission Regulations 5.2(b) (1) and (3) by Making Material
         Misrepresentations and Omissions to Customers ......................................... 8

         (a)  Defendant Tallinex Made Misrepresentations and Omissions ........................... 9

         (b)  Defendant Tallinex Acted with Scienter ....................................................... 10

         (c)  Defendant Tallinex's Misrepresentations Were Material ................................. 12

      3.   Defendant Tallinex Violated Section 6(c)(1) and Commission
         Regulation 180.1 by Making False and Misleading Statements and
         Omitting Material Facts in Connection with a Commodity in
         Interstate Commerce .................................................................................. 14

      4.   Defendant Tallinex Violated Commission Regulation 5.5 By Failing
         To Issue a Disclosure Statement to Customers .............................................. 15

VI.  RELIEF REQUESTED ............................................................................................ 15

   A. Permanent Injunctive Relief is Warranted ......................................................... 16

   B. Restitution To Customers Is Warranted ............................................................. 17

i

C.  A Civil Monetary Penalty Is Warranted ........................................................................ 18

## TABLE OF AUTHORITIES

### Cases

Ademiluyi v. PannyMac Mortg. Inv. Trust Holdings I, LLC, 929 F.Supp.2d 502

   (D. Md. 2013)........................................................................................................ 12

Baker v. Cook, 2011 U.S. Dist. Lexis 56106 (D. Utah May 23, 2011)........................................ 12

CFTC v. Avco Financial Corp., 28 F. Supp. 2d 104 (S.D.N.Y. 1998)........................................ 13

CFTC v. Baragosh, 278 F.3d 319 (4th Cir. 2002) ........................................................................ 13

CFTC v. British American Commodity Options Corp., 560 F.2d 135 (2nd Cir. 1977),

   cert denied , 438 U.S. 905 (1978) ......................................................................... 16

CFTC v. Brockbank, 505 F.Supp. 2d 1169 (D. Utah 2007) ........................................................ 17

CFTC v. GIGFX LLC, 844 F. Supp. 2d 58 (D.D.C. 2012) ........................................................... 8

CFTC v. Hunt, 591 F.2d 1211 (7th Cir. 1979) ............................................................................. 16

CFTC v. Hunter Wise Commodities, LLC, 749 F.3d 967(11th Cir. Fla. 2014)........................... 15

CFTC v. Hunter Wise, 21 F. Supp. 3d 1317 (S.D. Fla. 2014)...................................................... 15

CFTC v. Kraft Foods Group, Inc., 153 F. Supp. 3d 996 (N.D. Ill. 2015).............................. 14, 15

CFTC v. McClung, 2012 U.S. Dist. Lexis 25127 (D. Col. 2012) ........................................ passim

CFTC v. Muller, 570 F.2d 1296 (5th Cir. 1978)........................................................................... 16

CFTC v. Noble Wealth Data Information Services, Inc., 90 F. Supp. 2d 676

   (D. Md. 2000)................................................................................................ 13, 17

CFTC v. R.J. Fitzgerald & Co., 310 F. 3d 1321 (11th Cir. 2002), cert. denied,

   125 S. Ct. 808 (2004) ............................................................................. 9, 10, 12

CFTC v. Trimble, 2012 U.S. Dist. Lexis 140499 (D. Col. Sept. 28, 2012)........................... 11, 16

CFTC v. Trimble, 2013 U.S. Dist. Lexis 10955 (D. Col. Jan. 28, 2013) .............................. 16, 17

CFTC v. Vartuli, 228 F.3d 94 (2d Cir. 2000) ............................................................................... 13

CFTC v. Wall Street Underground, 281 F. Supp. 2d 1260 (D. Kan. 2003) ................................. 13

CFTC v. Wilshire Inv. Mgmt. Corp., 531 F.3d 1339 (11th Cir. 2008)........................................ 16

Dennis Garberg & Assocs. v. Pack Tech Int'l Corp., 115 F.3d 767 (10th Cir. 1997)................... 7

Drexel Burnham Lambert Inc. v. CFTC, 850 F.2d 742 (D.C. Cir. 1988).................................... 11

Facciola v. Greenberg Traurig, LLP, 781 F.Supp.2d 913 (D. Ariz. 2011).................................. 12

FDIC v. UMIC, Inc., 136 F.3d 1375, 1388 (10th Cir.), cert. denied, 525 U.S. 962;

   119 S.Ct. 404 L.Ed. 2d 328 (1998) ...................................................................... 17

First Nat'l Monetary Corp. v. Weinberger, 819 F.2d 1334 (6th Cir. 1987) .................................. 13

FTC v. Think Achievement Corp., 144 F. Supp. 2d 1013, 1021 (N.D. Ind. 2000) ..................... 18

FTC v. Affordable Media, 179 F.2d 1228, 1239 (9th Cir. 1999) .................................................. 18

FTC v. World Wide Factors, Ltd., 882 F.2d 344, 346 (9th Cir. 1988)......................................... 18

Hammond v. Smith Barney Harris Upham & Co., [1987-1990 Transfer Binder] Comm.

  Fut. L. Rep. (CCH) ¶ 24,617 (CFTC Mar. 1, 1990)................................................................ 12

Hill v. Bache Halsey Stuart Shields Inc., 790 F.2d 817 (10th Cir. 1986)................................... 10

Hirk v. Agri-Research Council, Inc., 561 F.2d 96 (7th Cir. 1977)............................................. 10

Icon v. Zohoor, 2012 U.S. Dist. Lexis 130001 (D. Utah 2012)..................................................... 8

In re Grossfeld, [1996–1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,921

  (CFTC Dec. 10, 1996), aff'd, 137 F.3d 1300 (11th Cir. 1998)............................................... 18

Miller v. CFTC, 197 F.3d 1227 (9th Cir. 1999) ........................................................................... 18

Olcot v. Delaware Flood Co., 327 F.3d 1115 (10th Cir. 2003) ...................................................... 7

R & W Technical Servs., Ltd. v. CFTC, 205 F.3d 165 (5th Cir.), cert. denied, 531 U.S. 817

  (2000) ...................................................................................................................................... 12

Reddy v. CFTC, 191 F. 3d 109 (2nd Cir. 1999) ........................................................................... 18

SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801 (2d Cir. 1975) ....................................................... 16

SEC v. Universal Consulting Res. LLC, 2010 US Dist. Lexis 128469 **4-5 (D. Colo.

  Nov 23, 2010)........................................................................................................................... 18

Suiter v. Mitchell Motor Coach Sales,·151 F.3d 1275, 1288-89 (10th Cir. 1998)...................... 17

U.S. v. Justice, 2006 U.S. Dist. Lexis 37044 (D. Utah 2006)........................................................ 7

United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219 (10th Cir. 2000) ............... 17

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194 (11th Cir. 2001) .................................................. 10

Zuffa v. Gonzalez, 2017 U.S. Dist. Lexis 204438 (D.Col. 2017)............................................... 7, 8

**Statutes**

7 U.S.C. § 1 *et seq.* (2012)........................................................................................................... 1

7 U.S.C. § 13a-1 (2012)............................................................................................................ 7, 15

7 U.S.C. § 13a-1(d)(3) (2012)...................................................................................................... 17

7 U.S.C. § 13a-1(e) (2012)............................................................................................................. 7

7 U.S.C. § 1a(18)(xi)(2012).......................................................................................................... 2

7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa)(2012) ....................................................................... 2, 8, 16

7 U.S.C. § 6b(a)(2)(A)(2012) ............................................................................... 2, 8, 9, 17

7 U.S.C. § 6b(a)(2)(C)(2012) ............................................................................... 2, 8, 9, 17

7 U.S.C. § 9(1)(2012) ......................................................................................... 2, 14, 17

## Other Authorities

*Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive*

    *Devices and Prohibition on Price Manipulation*, 76 Fed. Reg. 41398, 41401

    (July 14, 2011)................................................................................................ 14

## Rules

Fed.R.Civ.P. 55 ............................................................................................................ 7

Fed.R.Civ.P. 55(a) ....................................................................................................... 1

Fed.R.Civ.P. 55(b)(2) ................................................................................................... 1

*National Futures Association Rule 12(a)* ..................................................................... 4

## Regulations

17 C.F.R. § 1 et seq. (2017) ........................................................................................ 1

17 C.F.R. § 180.1(2017) ......................................................................................... 2, 17

17 C.F.R. § 180.1(a) (2017) ....................................................................................... 14

17 C.F.R. § 5.2 (2017) ................................................................................................. 8

17 C.F.R. § 5.2(b)( 3) (2017) ................................................................................. 2, 17

17 C.F.R. § 5.2(b)(1) (2017) ................................................................................. 2, 17

17 C.F.R. § 5.3(a)(6)(i)(2017) ................................................................................. 2, 8

17 C.F.R. § 5.5 (2017) .................................................................................... 3, 6, 15, 17

17 C.F.R. §§1.20-1.32 (2017) ..................................................................................... 6

## I.  INTRODUCTION

Plaintiff U. S. Commodity Futures Trading Commission ("Plaintiff", "CFTC" or "Commission"), pursuant to Federal Rules of Civil Procedure 7 and 55(b)(2), and District of Utah Local Rule ("D.U.Civ.R.") 7.1 , submits this *Motion and Memorandum of Law For Entry of Default Judgment Against Tallinex a/k/a Tallinex Limited* ("Motion") requesting that the Court enter the *Order of Default Judgment Against Defendant Tallinex a/k/a Tallinex Limited* submitted by Plaintiff herewith.  The Court had previously granted Plaintiff CFTC's Motion for Entry of Clerk's Default pursuant to Fed.R.Civ.P. 55(a). *[Docket Number ("Dkt.") 26].*  Plaintiff CFTC now moves the Court under Fed.R.Civ.P. 55(b)(2)  for  a default judgment that includes civil injunctive relief, equitable relief in the form or restitution, and civil monetary penalties.

## II.      BACKGROUND

On May 30, 2017, the Commission filed a Complaint for Permanent Injunction, Civil Monetary Penalties, and Other Equitable Relief ("Complaint") charging Defendant Tallinex a/k/a Tallinex Limited ("Tallinex") with four counts of violating the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* (2012) ("Act"), and Commission Regulations, 17 C.F.R. § 1 *et seq.* (2017) ("Regulations").  *[Dkt. 1]*

As background, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") enacted and incorporated into the Act in July 2010, the Commission adopted a new regulatory framework with respect to the offer and sale of off-exchange foreign currency ("forex").  Included in this framework is the requirement that entities marketing such transactions register with the Commission.  Specifically, an entity must be registered with the Commission as a Retail Foreign Exchange Dealer ("RFED") if it solicits or accepts orders for leveraged, margined or financed forex transactions from persons who are not

eligible contract participants ("non-ECPs" or "retail customers")[1] and the entity is or offers to be the counterparty to such transactions.  Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa)(2012), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i)(2017).

The Commission's Complaint alleges that between at least September 2012 and at least September 2016 ("the relevant period"), Tallinex, an Estonian company registered and doing business in St. Vincent and the Grenadines, solicited and accepted orders from U.S. retail customers in connection with leveraged or margined forex transactions and offered to be the counterparty to these transactions. *(Dkt. 1 ¶¶ 12, 13)* Tallinex's solicitation and acceptance of forex transactions from U.S. retail customers without being registered as an RFED violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2017).

The Commission's Complaint also alleges that in the course of soliciting U.S. customers Tallinex engaged in fraudulent and deceptive business practices which violated anti-fraud and other provisions of the Act and Regulations, including misrepresenting and omitting material facts and failing to disclose risk and other information mandated by the Commission. *[Id. ¶¶ 3, 34-42]* Specifically, the Commission's Complaint alleges that Tallinex's fraudulent and deceptive acts and practices violated Sections 4b(a)(2)(A) and (C) and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A), (C) and 9(1), and Commission Regulations 5.2(b)(1) and (3) and 180.1, 17 C.F.R. §§ 5.2(b)(1) and (3) and 180.1 (2017), which are anti-fraud provisions of the Act and

---

[1] An ECP is an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." Section 1a(18)(xi) of the Act, 7 U.S.C. § 1a(18)(xi)(2012).  Individuals who do not meet these criteria are non-ECPs or retail customers.  Tallinex's customers are typically non-ECP retail customers. *[Exhibit A, McCormack Declaration ("McCormack") ¶28)]*

Regulations, and Regulation 5.5, 17 C.F.R. § 5.5 (2017), which mandates risk disclosure and disclosure of other material information.

### III.     PROCEDURAL HISTORY

Defendant Tallinex was properly served with a summons and a copy of the Complaint on August 15, 2017.  *[Dkt. 19]*  Tallinex's Answer was due on September 5, 2017. *[Id.]*  Tallinex has failed to file an Answer or otherwise respond to the Complaint.  On April 23, 2018, the Clerk of the Court entered a default order against Tallinex.  *[Dkt. 26]*

### IV.     FACTS

#### A.     Tallinex's Operations

During the relevant period, Tallinex solicited customers, including U.S. retail customers, through its website www.tallinex.com and an introducing broker ("IB") program.[2]  *[McCormack ¶¶ 12 and 16]*

Customers could open forex trading accounts at Tallinex by completing and submitting an online application available on Tallinex's website.  The website targeted unsophisticated retail customers by emphasizing that customers could open an account for as little as 100 EUR/USD and that Tallinex's "ECN-Micro account" was "designed for traders new to the [f]orex market and those needing to trade smaller volumes."  The application did not collect information that would permit Tallinex to qualify customers as ECPs.  For example, it did not ask whether the prospective customer was using forex trading to manage an actual asset or liability risk, or whether the prospective customer had the ability to make or take delivery.  Similarly, the website did not ask questions about applicants' assets or income.  *[McCormack ¶¶ 13-17]*

_____

[2] The Commission's Complaint also alleges that defendant General Trader Fulfillment ("GTF") was one such IB.  GTF has executed a Consent Order of Permanent Injunction and Other Ancillary and Equitable Relief which was signed by the Court on June 26, 2018.  *[Dkt. 28]]*

Tallinex also designed the website specifically to attract U.S. customers. The website stated, "Tallinex welcomes residents of the U.S. . . . and provides them with the same leverage and hedging facilities as non-U.S. . . . residents."[3] *[McCormack ¶ 15]* Tallinex's online application contained a drop-down menu for the applicant to select his or her "country" and the U.S. was one of the choices. The online application also allowed a customer to select a base currency for transactions in his or her account and the U.S. dollar was one of two (the Euro being the other) available currencies. *[McCormack ¶ 16]* Once the customers completed their online applications, Tallinex typically instructed them to send their funds to Tallinex's bank account in Sophia, Bulgaria. Tallinex then transferred the customer funds to various other Tallinex foreign bank accounts in the Czech Republic, Georgia, and Estonia. *[McCormack ¶¶ 24-29]*

Tallinex's efforts to solicit U.S. customers were successful. From September 2012 to September 2016, 1,450 U.S. customers invested at least $12,346,423 with Tallinex. Tallinex returned $5,429,537 to those customers. Tallinex paid $3,372,505.54 to 739 customers (these customers received more monies than they originally invested with Tallinex). Tallinex returned $2,057,032.43 to the remaining 711 customers. Taking into account the repayments by Tallinex to its customers, the 711 customers are still owed $10,289,391.44 from their investment with Tallinex. *[McCormack ¶¶ 30-34]*

---

[3] Hedging forex contracts is banned in the U.S. because of the risk of rapid losses associated with this type of trading. Similarly, leverage rates for trading forex in the U.S. are capped at 1:50, meaning that a customer can only buy forex contracts worth 50 times the amount he or she initially invests. *National Futures Association Rule 12(a)* Tallinex offered U.S. customers leverage of up to 1:1000. This means that a customer can buy or sell up to 1000 times the amount of funds he has invested. With this degree of leverage, even a small price movement can produce large losses and customers can rapidly lose their funds and be unable to recover from even a single losing trade. Tallinex did not disclose to U.S. customers, particularly the retail customers it aimed to reach, the U.S. ban on hedging and leverage rate caps and the reasons the U.S. enacted these prohibitions. *[See e.g. McCormack ¶¶ 20-21 on Tallinex's failure to disclose risk]*

**B.      Tallinex's Fraud**

Tallinex engaged in fraudulent and deceptive acts and practices to solicit U.S. customers to trade forex contracts.  Tallinex's fraudulent and deceptive acts and practices included misrepresenting that it was lawfully doing business in the U.S., misrepresenting the likelihood of profits and risk of loss involved in trading forex contracts, and misrepresenting the safety of customer funds and how customer funds were being used.

Tallinex falsely represented that it could do business in the U.S. and specifically targeted U.S. customers in its solicitations.  It invited U.S. customers to open forex accounts, offering them access to trade on its platform using U.S. dollars, and offering U.S. customers hedge trading and leverage rates not available in the U.S. without disclosing that such trading is banned in the U.S.[4]  *[McCormack ¶¶ 15-16]*

Tallinex also misrepresented the likelihood of profits and risk of loss involved in trading forex contracts.  Tallinex's website claimed that money managers made profits of between 162.29% and 1301.10% trading forex contracts for customers.  *[McCormack ¶18]*  Against these claims of extraordinary profits, Tallinex failed to disclose to its customers the true likelihood of profits and risk of loss trading its forex contracts.  In fact, during the time period that Tallinex purportedly made these profits, Tallinex  actually owed customers over $10 million. *[McCormack ¶34]* Finally, Tallinex claimed that it kept customer funds "separated from company funds" in "segregated," "off-balance-sheet accounts," and that, "Tallinex is unable to use client funds for company expenses."  *[McCormack ¶ 19]*  These claims are false and deceptive; the very nature of forex trading precludes "separating" or "segregating" customer funds.  Segregation of customer funds is a specific term in the derivatives industry that carries

---

[4] See footnote 3, *supra.*

with it certain protections for handling, withdrawing, transferring or disbursing such funds.[5]

However, in forex trading, where the forex dealer is or offers to be the counterparty to the

customers' trade (the opposite side of the customers' trade) as Tallinex does, the forex dealer has

a direct financial conflict of interest with its customers because the forex dealer makes money

when the customer loses money trading.[6]  Thus, Tallinex customers do not have their funds

"separated," "segregated" or "off" of Tallinex's "balance sheet."  Rather the customers' funds

are the very funds Tallinex, as counterparty to the customers' trades, uses to enrich itself.

**C.**      **Tallinex Failed to Provide Customers with a Mandated Risk Disclosure Statement**

Tallinex failed to provide customers with a Risk Disclosure Statement mandated by

Commission regulations.  The regulatory framework developed as part of the Dodd-Frank

revisions to the Act mandates that entities that offer forex contracts provide retail customers with

a Risk Disclosure Statement that provides customers with risk disclosures as well as other crucial

information about forex trading.  Specifically, Tallinex was required to provide its customers

with, among other information, (a) a year's worth of its forex trading profits and losses, as well

as warnings about (b) the risks of rapid trading losses that can result from trading forex with

leverage, (c) that Tallinex may commingle customer funds with its own operating funds or use

customer funds for purposes other than trading and that Tallinex, as counterparty to the

customers' trades, has a direct financial conflict of interest with its customers such that when the

---

[5] *See, e.g., Commission Regulations 1.20 -1.32; 17 C.F.R. §§1.20-1.32 (2017)* accounts
including, the daily computation of the total amount of customer funds in segregated accounts,
submission to CFTC of daily reports of the amounts of customer funds held in segregation, and
submission to the CFTC of the names and location of financial institutions holding such
customer funds).

[6] *See, e.g., Commission Regulation 5.5, 17 C.F.R.§ 5.5,* (warning that the forex dealer
counterparty makes money when the customer loses money).

customer loses money trading, Tallinex is making money.  Tallinex did not provide these disclosures to customers.  *[McCormack ¶¶20-21]*

## V.      LEGAL ARGUMENT

### A.      Jurisdiction and Venue Are Proper

This Court possesses jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive and other relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.  Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because the Defendant resides in or transacted business within this district and the acts and practices in violation of the Act occurred, are occurring, or are about to occur, within this district.

### B.      Entry of Default Judgment is Proper

Fed.R.Civ.P. 55 governs the orderly process of defaults.  After obtaining an entry of default by the Clerk of the Court under Rule 55(a), the party may seek a default judgment under Rule 55(b).  *Zuffa v. Gonzalez*, 2017 U.S. Dist. Lexis 204438 ** 2-3 (D.Col. 2017) *(citations omitted).*  Whether or not to grant a default judgment is in the sound discretion of the district court.  *Zuffa* at *2*, citing, Olcot v. Delaware Flood Co.*, 327 F.3d 1115 (10th Cir. 2003); *Dennis Garber & Assocs. v. Pack Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997).  Once the party has defaulted, "the factual allegations of the complaint…will be taken as true."  *CFTC v. McClung*, 2012 U.S. Dist. Lexis 25127 at **13-14 (D. Col. 2012); *U.S. v. Justice*, 2006 U.S. Dist. Lexis 37044 (D. Utah 2006) *(citations omitted).*  The Court must then consider whether the Complaint's unchallenged facts constitute a legitimate cause of action.  In other words, there

must be a sufficient basis in the pleadings for the judgment to be entered.  *Icon v. Zohoor*, 2012

U.S. Dist. Lexis 130001 (D. Utah 2012) (*citations omitted*).  Damages may be awarded where

the record adequately supports the basis for the award.  *Zuffa* at *4 (*citations omitted*).

**C.      Defendant Tallinex Violated the Commodity Exchange Act**

1.      Defendant Tallinex Solicited and Accepted Forex Transactions from Non-ECPs Without Being Registered with the Commission in Violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act and Commission Regulation 5.3(a)(6)(i)

Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2012), and

Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2017), together prohibit any entity from

soliciting or accepting orders from non-ECP customers in connection with leveraged, margined

or financed forex contracts, and from being or offering to be the counterparty to the contracts,

unless such entity is registered with the Commission as an RFED.

From at least September 2012 to at least September 2016, Tallinex solicited and accepted

orders for leveraged or margined forex contracts from non-ECP customers residing in the U.S.

*[McCormack ¶¶ 13-17, 27-31]* Tallinex, therefore, has violated Section 2(c)(2)(C)(iii)(I)(aa) of

the Act, and Regulation 5.3(a)(6)(i).  *CFTC v. GIGFX LLC*, 844 F. Supp. 2d 58, 63 (D.D.C.

2012) (an unregistered forex dealer that solicits or accepts orders from retail customers violates

Section 2(c)(2)(C)(iii)(I)(aa) and Regulation 5.3(a)(6)(i)).

2.      Defendant Tallinex Violated Sections 4b(a)(2)(A) and (C) of the Act and Commission Regulations 5.2(b) (1) and (3) by Making Material Misrepresentations and Omissions to Customers

Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A), (C), make it unlawful

for any person in or in connection with any order to make or the making of any futures contract,

to cheat, defraud or willfully deceive, or attempt to cheat, defraud or willfully deceive, any other

person by any means whatsoever.  Commission Regulation 5.2, 17 C.F.R. § 5.2 makes Section

4b(a) applicable to retail forex transactions.  Together these sections prohibit fraud in connection

with retail forex transactions.  Tallinex violated Sections 4b(a)(2)(A) and (C) of the Act, 7

U.S.C. §§ 6b(a)(2)(A), (C) by misrepresenting and omitting material facts in connection with

their retail forex transactions.

To establish that Tallinex violated Sections 4b(a)(2)(A) and (C) of the Act through

fraudulent misrepresentations and omissions, the Commission must show that (1) a

misrepresentation, misleading statement, or deceptive omission was made; (2) with scienter; and

(3) that the misrepresentation, misleading statement, or deceptive omission was material. *CFTC*

*v. R.J. Fitzgerald & Co., 310 F. 3d 1321, 1328 (11th Cir. 2002), cert. denied*, 125 S. Ct. 808

(2004); *see also CFTC v. McClung*, 2012 U.S. Dist. Lexis 25127 *15 (D. Colo. Feb. 28, 2012).

Tallinex's fraudulent misrepresentations and omissions included, misrepresenting that it

was lawfully doing business in the U.S., misrepresenting the likelihood or profit and loss

involved in trading its forex contracts, and misrepresenting the safety of customer funds by

claiming that customer funds were kept in "segregated" accounts "off [of Tallinex's] balance

sheet."  These misrepresentations and omissions were material, made either intentionally or with

a reckless disregard of their truth or falsity, and violated Sections 4b(a)(2)(A) and (C) of the Act

and Commission Regulation 5.2.

### (a)  Defendant Tallinex Made Misrepresentations and Omissions

Tallinex represented that it was lawfully doing business in the United Sates.  In fact,

Tallinex was not lawfully doing business in the U.S. because pursuant to Section

2(c)(2)(C)(iii)(I)(aa) of the Act and Regulation 5.3(a)(6)(i), an RFED must be registered with the

Commission before it can do business with non-ECPs.  *[McCormack ¶¶ 6-9, 15-16]*

9

In addition, despite Tallinex's claims of extraordinary profits by money managers trading its forex contracts, Tallinex owed nearly half of its customers over $10,000,000 in funds. *[McCormack ¶ 34]*   By making claims of extraordinary profits while at the same time omitting information about the likelihood of profit and risk of loss, Tallinex misrepresented the true likelihood of profits and risk of loss.  *R.J. Fitzgerald*, 310 F.3d at 1329 (misrepresentations include overemphasizing profit potential and presenting an unbalanced picture by overemphasizing profit potential and downplaying risk of loss); *Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96, 98-99and 103-104 (7th Cir. 1977) (misrepresentations about likelihood of profitability and risk of loss violated Section 4b when made in the course of customer account solicitation), *cited in McClung* at *18.

Finally, Tallinex falsely represented to customers that their funds were safe and kept in segregated accounts off of Tallinex's balance sheet.  Segregated funds have a number of Commission mandated protections and limitations on use.  *See supra, note 5.*  None of these protections were afforded to Tallinex's customers, and in fact, as counterparty to the customers' trades, Tallinex gained whenever the customer lost.

### (b)  Defendant Tallinex Acted with Scienter

Tallinex acted with scienter in making these misrepresentations and omissions of material fact.  Under the Act, scienter requires "highly unreasonable omissions or misrepresentations …that present a danger of misleading [customers] which is either known to the Defendant[s] or so obvious that Defendant [s] must have been aware of it."  *R.J. Fitzgerald*, 310 F.3d 1321, 1328 (11th Cir. 2002) (quoting *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001)); *Hill v. Bache Halsey Stuart Shields Inc.,* 790 F.2d 817, 822-23 (10th Cir. 1986) (scienter requires a degree of intent beyond carelessness or negligence); *see also CFTC v. Trimble*, 2012 U.S. Dist.

Lexis 140499 (D. Col. Sept. 28, 2012) *("Trimble I")*.  The scienter element is established when

either: (1) the defendant knew his representations were false; or (2) the defendant made the

representations with a reckless disregard for their truth or falsity.  *Drexel Burnham Lambert Inc.*

*v. CFTC*, 850 F.2d 742, 748 (D.C. Cir. 1988) (stating that "a degree of intent beyond

carelessness or negligence" under Section 4b of the Act and recklessness satisfies this scienter

requirement), *citations omitted.  See also McClung* \*\*16-17 ("defendants acted with scienter

when they knew their represenations were fase and or acted with reckless disregard of the truth

in making [their] mispresentations).

Tallinex acted knowingly or recklessly in misrepresenting itself as lawfully doing

business in the United States.  Tallinex specifically targeted U.S. customers but did not contact

the CFTC or NFA to determine whether or not there were registration requirements or to obtain

information as to what it had to do to operate legally in the U.S.  *[McCormack ¶¶ 6-9, 14-16]*

Clearly Tallinex was at least reckless in representing that its operations in the U.S. were legal.

Similarly, Tallinex knowingly and recklessly misrepresented that trading its forex

contracts could result in extraordinary profits.  Tallinex claimed these profitable results at the

very time its customers were steadily losing money from trading forex contracts.  *See discussion*

*supra*, *pgs. 6-7.*  Tallinex knew or should have known that the extraordinary profits it was

promoting did not truthfully reflect the likelihood of profit and risk of loss from trading its forex

contracts.

Finally, Tallinex knowingly and recklessly misrepresented the safety of customer funds

by claiming that customer funds were held in a "segregated account" off of Tallinex's balance

sheet.  *[McCormack ¶ 19]*  Tallinex used a specific term of art ("segregated account") whose

purpose was to confuse and mislead customers.  The very nature of the Tallinex's business as

11

counterparty to its customers trades (the opposite side of its customers trades) meant that Tallinex was in a position to gain financially if the customer lost.  By deceptively claiming to segregate customer funds, Tallinex presented itself as safeguarding customer funds when no such safeguards existed.  *(See discussion, supra at pgs. 6-7).*

### (c)  Defendant Tallinex's Misrepresentations Were Material

Tallinex's misrepresentations and omissions were material.  A representation or omission is "material" if a reasonable investor would consider it important in deciding whether to make an investment.  *R & W Technical Servs., Ltd. v. CFTC*, 205 F.3d 165, 169 (5th Cir.), *cert. denied*, 531 U.S. 817 (2000); *R.J. Fitzgerald,* 310 F.3d at 1328-29, *see also McClung* at *17-18. Misrepresentations of material fact may be viewed through the lens of an objectively reasonable person looking at the overall message being portrayed.  *R.J. Fitzgerald*, 310 F.3d at 1328, 1331 (*citing Hammond v. Smith Barney Harris Upham & Co*., [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,617 at 36,657 & n.12 (CFTC Mar. 1, 1990)).  Each of Tallinex's misrepresentations  set forth here were material and when taken together show that Tallinex engaged in a calculated effort to defraud.

Whether or not an entity is lawfully licensed to do business has been recognized as a material fact sufficient to form the basis of a fraud action.  *See, e.g.*, *Baker v. Cook*, 2011 U.S. Dist. Lexis 56106 at *7-8 (D. Utah May 23, 2011); *see also*, *Facciola v. Greenberg Traurig, LLP,* 781 F.Supp.2d 913, 920 (D. Ariz. 2011) (investors allegations that defendants had claimed firm was licensed to sell securities, when it was not, was pleaded with particularity in fraud action), *aff'd*, 593 Fed. Appx. 723 (9th Cir. 2015); *Ademiluyi v. PannyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F.Supp.2d 502, 532 (D. Md. 2013) (mortgagor stated with sufficient

particularity that lender violated its duty to disclose that it lacked the license required to operate in state as a collection agency).

Misrepresentations concerning the likelihood of profiting from trading and risk of loss are also material and they violate the antifraud provisions of the Act. *See, e.g., CFTC v. Avco Financial Corp.*, 28 F. Supp. 2d 104, 115-16 (S.D.N.Y. 1998), *aff'd in relevant part, rev'd. and remanded in part on other grounds sub nom. CFTC v. Vartuli,* 228 F.3d 94 (2d Cir. 2000); *First Nat'l Monetary Corp. v. Weinberger*, 819 F.2d 1334, 1340 (6th Cir. 1987).  In fact, "misrepresentations concerning profit and risk go to the heart of a customer's investment decision and are therefore material as a matter of law."  *CFTC v. Noble Wealth Data Information Services, Inc.,* 90 F. Supp. 2d 676, 686 (D. Md. 2000) (guarantees of profitability are prohibited by Section 4b), *aff'd in part and vacated in part sub nom. CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002).  *See also*, *CFTC v. Wall Street Underground*, 281 F. Supp. 2d 1260, 1269-1270 (D. Kan. 2003).

Falsely representing that customer funds are "segregated" and kept off of Tallinex's balance sheet is also material because implies a certain safety, security and limitation on how customer funds could be used.  A reasonable investor would want to know that these safeguards did not exist and that Tallinex was actually in a position to profit off of their losses.

In summary, any reasonable investor would want to know whether the entity they were sending their funds to was (a) operating unlawfully in the United States, (b) truthfully representing the likelihood of profit and risk of loss in trading their forex contracts, and (c) whether or not advertised safeguards for their funds were actually in place.

### 3.    Defendant Tallinex Violated Section 6(c)(1) and Commission Regulation 180.1 by Making False and Misleading Statements and Omitting Material Facts in Connection with a Commodity in Interstate Commerce

Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), provides, in relevant part, that it shall be unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate.

To effectuate Section 6(c)(1) of the Act, the Commission promulgated Regulation 180.1, 17 C.F.R. § 180.1(a), which provides, in relevant part, that it shall be unlawful for any person, directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

The Commission has noted, "Section 6(c)(1) and Rule 180.1 augment the Commission's existing authority to prohibit fraud and manipulation." *Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation*, 76 Fed. Reg. 41398, 41401 (July 14, 2011); *CFTC v. Kraft Foods Group, Inc*., 153 F. Supp. 3d 996 (N.D. Ill. 2015).  The level of scienter required to plead a cause of action

under Section 6(c) (1) and Regulation 180.1 is that the defendant acted knowingly or recklessly. *Kraft Foods*, 153 F. Supp. 3d at 1007, (citing 76 F.R. at 41,400).  Therefore, after finding defendants "made material misrepresentations and materially misleading omissions with scienter," the court "need only determine whether [defendants] did so in connection with purchase or sale of commodities" to find violations of Section 6(c) and Regulation 180.1.  *CFTC v. Hunter Wise*, 21 F. Supp. 3d 1317, 1347 (S.D. Fla. 2014), *aff'd. CFTC v. Hunter Wise Commodities, LLC*, 749 F.3d 967(11th Cir. Fla. 2014).

Section 6(c)(1) of Act is made applicable to retail forex contracts such as Tallinex's under Section 2(c) (2)(C)(ii)(1) of the Act.  The misrepresentations and omissions that form the basis of the Section 4b(a) fraud claims also support fraud claims under Section 6(c)(1) and Commission Regulation 180.1.  These misrepresentations and omissions of material fact made either knowingly or recklessly in connection with retail forex contracts violated Section 6(c)(1) of the Act and Commission Regulation 180.1.

**4.    Defendant Tallinex Violated Commission Regulation 5.5 By Failing To Issue a Disclosure Statement to Customers**

Commission Regulation 5.5, 17 C.F.R. § 5.5 contains almost three pages of disclosures that forex dealers must give to customers.  Tallinex's risk disclosure consisted of a four line disclaimer that contained none of the extensive information required by the Commission.  Accordingly, Tallinex violated Commission Regulation 5.5.  *[McCormack ¶¶ 20-21]*

## VI.    RELIEF REQUESTED

Under Section 6c of the Act, 7 U.S.C. § 13a-1, the Commission may seek remedies to address the conduct of entities found to have violated the Act.  These remedies include a) civil injunctive relief, b) restitution to customers harmed by the conduct, and c) civil monetary penalties.

A.      **Permanent Injunctive Relief is Warranted**

To obtain permanent injunctive relief, the Commission must show that a violation of the Act has occurred and that there is a reasonable likelihood of future violations.  *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979).  *Accord CFTC v. British American  Commodity Options Corp.,* 560 F.2d  135, 142 (2nd Cir. 1977), *cert denied ,* 438 U.S. 905 (1978); *CFTC v. Muller,* 570 F.2d 1296, 1300(5th Cir. 1978); *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1344 (11th Cir. 2008).  *See also CFTC v. Trimble*, 2013 U.S. Dist. Lexis 10955 *21 (D. Col. Jan. 28, 2013) ("Trimble II").*  The Commission is not required to make a specific showing of irreparable injury or inadequacy of other remedies because the Act is remedial in nature, designed to prevent injury to the public and to deter illegal conduct.  *Hunt*, 591 F.2d at 1220; *Muller*, 570 F.2d at 1300, *see also Trimble II*, 2013 U.S. Dist. Lexis 10955 *21.

"Whether a likelihood of future violations exists depends upon the totality of the circumstances.'"  *Hunt*, 591 F.2d at 1220, (*quoting SEC v. Mgmt. Dynamics, Inc*., 515 F.2d 801, 807 (2d Cir. 1975).  Foremost among the factors to be considered is "the past illegal conduct of a Defendant" which is "highly suggestive of future violations."  Other factors to consider include whether the conduct was an isolated occurrence, took place over a long period of time, and whether the circumstances indicate that the defendant is in a position that makes future violations likely to occur.  *Id.* at 1220, *cited in CFTC v. Trimble I,* 2012 U.S. Dist. Lexis 140499 at *16, *other citations omitted.*

The Commission has made a showing that Tallinex violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C.§ 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i), which prohibit offering unlawful forex contracts; Sections 4b(a)(2)(A), (C), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A) and (C), and § 9(1), and Commission Regulations 5.2(b)(1) and (3),

16

and 180.1, 17 C.F.R. §§ 5.2(b)(1) and (3), and 180.1, which prohibit fraud; and Commission

Regulation 5.5, 17 C.F.R. § 5.5, which requires certain disclosures.

Further, Defendant Tallinex's conduct was not an isolated occurrence.  It occurred over a

four year period and was extensive, involving at over 1,000 customers .  To date approximately

$10,000,000 in customer funds remain outstanding and unaccounted for.  *[McCormack ¶¶ 31-*

*34]*  A permanent injunction will prevent Tallinex from causing further harm to members of the

public.

**B.       Restitution To Customers Is Warranted**

Pursuant to Section 6c(d)(3) of the Act, 7 U.S.C. § 13a-1(d)(3), this Court may order

restitution to persons who have sustained losses caused by Tallinex's violations.

Restitution is a remedy designed to "restore the status quo and order the return of that which

rightfully belongs to [investors]."  *Noble Wealth*, 90 F.Supp.2d at 693, *citing Porter v. Warner*,

328 U.S. at 402; *CFTC v. Brockbank*, 505 F.Supp. 2d 1169, 1175 (D. Utah 2007).  Restitution is

measured by the aggregate amount invested less refunds made by the defendants.  *Noble Wealth*,

90 F.Supp.2d at 693, *see also CFTC v. Trimble II*, 2013 U.S. Dist. Lexis 10955 *22, (ordering

restitution for the amounts that Defendant failed to return funds to investors).  Here, the

difference between the amount invested and the amount returned to investors is $10,289, 391.

*[McCormack ¶ 34]*.  With prejudgment interest, the amount rises to $12,578,781.[7]  *[McCormack*

*¶ 36]*

---

[7] The Tenth Circuit has a presumption of awarding prejudgment interest especially in areas
of fraud.  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219 (10th Cir.
2000), *citing, FDIC v. UMIC, Inc.,* 136 F.3d 1375, 1388 (10th Cir.) ("pre-judgment interest
should normally be aware on successful federal claims"), *cert. denied,* 525 U.S. 962; 119
S.Ct. 404, 142 L.Ed. 2d 328 (1998). *Suiter v. Mitchell Motor Coach Sales,·*151 F.3d 1275,
1288-89 (10th Cir. 1998), *and cases cited thereto (*pre-judgment interest awards are

**C.      A Civil Monetary Penalty Is Warranted**

Section 6c of the Act allows the Commission to assess civil monetary penalties against defendants of the higher of $170,472 per violation or triple the monetary gain to the Defendant. The Commission has set forth several factors to consider in assessing a civil monetary penalty. These factors include: whether the violations involved core provisions of the Act and the relationship of the violation at issue to the regulatory purposes of the Act; whether or not scienter was involved; the consequences flowing from the violative conduct including whether or not there was harm to customers. *In re Grossfeld*, [1996–1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,921 at 44,467–8 (CFTC Dec. 10, 1996), *aff'd*, 137 F.3d 1300 (11th Cir. 1998)). Further, civil monetary penalties should "reflect the . . . seriousness of each violation, and should be sufficiently high to deter future violations," *Id.*; *Reddy v. CFTC,* 191 F. 3d 109-123 (2nd Cir. 1999); *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999).

This case warrants the imposition of a substantial civil monetary penalty.  Tallinex's violations were egregious and struck at core provisions of the Act – fraud and unlawful trading. Fraud is a core violation of the Act.  *Grossfeld*, ¶ 26,921 at n.28 ("conduct that violates core

---

particularly appropriate in cases of investment fraud because the purpose of prejudgment interest is to fully compensate the injured party for his or her loss.).

Repatriation of foreign funds to satisfy equitable relief is also appropriate.  *See, e.g.,  FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 1013, 1021 (N.D. Ind. 2000) (in order to satisfy an award of equitable monetary relief, a court may order the repatriation of foreign funds, *citing, FTC v. Affordable Media*, 179 F.2d 1228, 1239 (9th Cir. 1999) ( affirming contempt order for defendants to transfer foreign funds to the United States) and *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th Cir. 1988) (affirming injunction ordering repatriation of foreign funds) other citations omitted; *see also, SEC v. Universal Consulting Res. LLC*, 2010 US Dist. Lexis 128469 **4-5 (D. Colo. Nov 23, 2010) (injunctive order ordering repatriation of funds).

provisions of the Act such as …defrauding customers is very serious even if there are mitigating facts and circumstances"), *citation omitted*.

Plaintiff Commission, therefore, respectfully requests that the Court enter a judgment for a civil monetary penalty in the amount of $681,888, with post-judgment interest thereon pursuant to 28 U.S.C. § 1961 ("[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court).  Plaintiff's requested civil monetary policy is derived from the Act's statutory amount per violation, which specifically permits civil monetary penalties in the amount of $170,472 per violation.  The Commission charged in its Complaint that each and every act of entering into retail forex contracts with a U.S. customer and each and every act of defrauding a U.S. customer is a separate and distinct violation of the Act.  *[Dkt. 1 ¶¶ 53, 58, 63].* As such, Plaintiff's requested civil monetary penalty of $681,888 based upon a penalty of $170,472 per count for each of the four counts for which Tallinex has been charged is well within the parameters of the Act and is not unreasonable given the seriousness of the violations.


Dated: July 6, 2018                          */s/ David Terrell*
                                             David Terrell
                                             312- 596-0539 (ph)
                                             312-596-0714 (fax)
                                             dterrell@cftc.gov

                                             One of the Attorneys for the
                                             U.S. Commodity Futures Trading Commission
                                             525 West Monroe Street
                                             Suite 1100
                                             Chicago, Illinois 60661


                                             Camille M. Arnold
                                             312- 596-0524 (ph)
                                             312-596-0714 (fax)
                                             carnold@cftc.gov

Diane Romaniuk
312- 596-0541 (ph)
312-596-0714 (fax)
dromaniuk@cftc.gov