IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TALLINEX a/k/a TALINEX, Ltd.; and GENERAL TRADER FULFILLMENT,<br><br>Defendants. | **ORDER FOR FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER STATUTORY AND EQUITABLE RELIEF**<br><br>Case No. 2:17-cv-00483-DN<br><br>District Judge David Nuffer |

On May 30, 2017, the Commodity Futures Trading Commission ("Commission" or "Plaintiff") filed a Complaint[1] charging Defendant Tallinex a/k/a Tallinex, Ltd. ("Defendant" or "Tallinex") with violating Sections 2(c)(2)(C)(iii)(I)(aa), 4b(a)(2)(A) and (C) and 6(c)(1) of the Commodity Exchange Act ("the Act"), 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), 6b(a)(2)(A), (C) and 9(1) (2012) and Commission Regulations ("Regulations") 5.2(b)(1) and (3), 5.3(a)(6)(i), 5.5 and 180.1, 17 C.F.R. §§ 5.2(b)(1) and (3), 5.3(a)(6)(i), 5.5 and 180.1 (2017).

On August 15, 2017, Tallinex was properly served with the summons and Complaint pursuant to Rule 4(f)(2)(C)(ii) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") by registered mail addressed by the Clerk of the Court.[2] Defendant Tallinex's Answer was due on September 5, 2017. Tallinex has failed to appear or answer the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1). Accordingly, upon the Commission's filing of a motion for

---

[1] Complaint for Permanent Injunction, Civil Monetary Penalties, and Other Ancillary and Equitable Relief ("Complaint"), docket no. 2, filed May 30, 2017.

[2] Acknowledgment of Service, docket no. 19, filed Sept. 29, 3017.

entry of a clerk's default against Defendant Tallinex,[3] and on April 24, 2018, the Clerk of this Court entered a default against Defendant Tallinex.[4] The Commission has now moved this Court to grant final judgment by default against Defendant Tallinex, order permanent injunctive relief, and impose a restitution obligation and a civil monetary penalty.[5]

Having carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its motion, the record in this case, and being otherwise advised in the premises,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Default Judgment[6] against Defendant Tallinex is GRANTED. Accordingly, findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief ("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. § 13a-1 (2012), are entered as set forth herein.

## I.
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A. Findings of Fact**

**The Parties to This Order**

1. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. Pt. 1.1 – 190.10 (2017).

---

[3] Commodity Futures Trading Commission's Motion for Entry of Clerk's Default Under Fed. R. Civ. P. 55(a), docket no. 25, filed Apr. 18, 2018.

[4] Default Certificate, docket no. 26, filed Apr. 23, 2018.

[5] Plaintiff Commodity Futures Trading Commission's Motion and Memorandum of Law in Support of Entry of Default Judgment Against Defendant Tallinex a/k/a Tallinex, Ltd. ("Motion for Default Judgment"), docket no. 33, filed July 6, 2018.

[6] *Id*.

2. Defendant Tallinex a/k/a Tallinex Limited is an Estonian company licensed to do business in St. Vincent and the Grenadines. It uses as a business address The Jaycees Building Stoney Ground, P.O .Box 362, Kingstown VC0100, St Vincent and the Grenadines, and also purports to have a business address in Estonia of Tornimae tn5, Kesklinna Iinnaosa, Tallina linn, Harju Maarkond 10145. Tallinex has never been registered with the Commission in any capacity.

**Tallinex's Operations**

3. Tallinex operated a website at [www.tallinex.com](www.tallinex.com) and also operated an introducing broker program whereby companies introduced forex trading accounts to Tallinex and received commissions on revenue generated by the accounts' trading activity.

4. At least during the relevant time period, Tallinex solicited and accepted funds and orders from non-ECP, U.S. resident customers to trade leveraged forex contracts.

5. Customers could open trading accounts by submitting information online through Tallinex's website. During the relevant period, the Tallinex website, in the frequently asked questions section, stated, "Tallinex welcomes residents of the U.S. . . . and provides them with the same leverage and hedging facilities as non-U.S. . . . residents." Further, Tallinex's online application contained a drop down menu for the applicant to select his or her "country" and the U.S. was one of the choices. The online application also allowed a customer to select a currency for his or her account, and one of the two available currencies was the U.S. dollar.

6. In or around September 2016, Tallinex changed its website to state that it does not accept U.S. customers.

7. Tallinex's online application did not solicit information concerning whether prospective customers were ECPs and it failed to inquire whether a prospective customer had the ability or the business need to accept foreign currency into his or her bank account. Tallinex permitted customers to open forex trading accounts with a minimum initial deposit of 100

EUR/USD. Tallinex's website stated that its ECN-Micro account was "designed for traders new to the [f]orex market, and those needing to trade smaller volumes."

8. Tallinex determined the "spread" for the forex contracts it offered to customers. Tallinex offered its customers' variable spreads averaging between 0.5 and 2.5 pips (the measuring mechanism for price changes in forex contracts per contract such as EUR/USD (Euros versus U.S. dollars). Tallinex therefore acted as the counterparty to its customers' contract.

9. Tallinex offered its non-ECP customers forex contracts with leverage of up to 1:1000. This meant that a customer could increase its trading position by buying or selling up to 1000 times the amount of funds he or she had invested. Thus, for example, a Tallinex customer could trade up to $1,000,000 notional value in foreign currencies with a $1,000 deposit, and a customer with $10,000 invested could trade up to $10,000,000 in foreign currencies. This spectacularly high degree of leverage meant that even a small price movement could produce large losses in relation to the customer's initial deposit and could result in customers rapidly losing their funds and being unable to ever recover from a losing trade.

10. Tallinex's online account application did not require that the customer state whether or not the customer had the ability to deliver and accept delivery in connection with the customer's lines of business, which is one of the prerequisites to qualify as an ECP.

11. Tallinex's forex contracts neither resulted in delivery within two days nor created an enforceable obligation to deliver between a seller and a buyer who had the ability to deliver and accept delivery, respectively, in connection with their lines of business. Rather, these forex contracts were ultimately offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

**Tallinex's Solicitation Fraud**

12. Defendant Tallinex fraudulently solicited U.S. retail forex customers by making false and misleading misrepresentations of material fact and omitting material information, including but not limited to: (a) falsely representing that Tallinex could do business in the United States; (b) misrepresenting and omitting the likelihood of profit and risk of loss involved in trading their forex contracts; (c) falsely and misleadingly representing the safety of customer funds in the event of Tallinex's financial collapse (*i.e.*, counterparty risk).

13. Defendant Tallinex made these false and misleading misrepresentations of material fact and omitted material information during the relevant period on its website, in correspondence and discussions with retail forex customers, and in social media sites available to the general public, among other places.

14. Defendant Tallinex falsely represented to U.S. customers that it could do business in the U.S. by stating on its website that it "welcomes residents of the U.S." and using at least one domestic IB to solicit U.S. customer accounts on Tallinex's behalf.

15. Further, in the course of soliciting U.S. customers, Tallinex misrepresented and omitted material facts regarding the likelihood of profit and the risk of loss associated with trading Tallinex's forex contracts.

16. Specifically Tallinex's website represented that money managers who traded its forex contacts for customers made purported profits of 162.29% in a little over a year [and] up to 1301.10% in a little over a two-year period. Tallinex promoted these extraordinary profits to create the misleading impression that forex investments made with it were likely to be profitable for the specific purpose of increasing its number of customer accounts. However, the website failed to disclose the likelihood of profits and risk of loss in trading its forex contracts. For example, it did not disclose the percentages of retail forex accounts that were profitable and not

profitable. By acting as an RFED, Tallinex had a duty to disclose this information under Regulation 5.5 in order to give a balanced and realistic view of the results of trading its forex contracts.

17. Tallinex also did not provide all customers with a risk disclosure statement that warned customers of the risk of rapid losses using leveraged trading. By acting as an RFED, Tallinex had a duty to disclose this information under Regulation 5.5 in order to give a balanced and realistic view of the results of trading its forex contracts with leverage.

18. Tallinex knowingly or recklessly made these material misrepresentations and omissions. Tallinex had actual profit and loss history in its possession, but failed to disclose this balanced information to customers and potential custormers while touting extraordinary profits, including profits of between 162.29% and 1301.10%. Accordingly, Tallinex made these misrepresentations knowingly or recklessly.

19. Tallinex also misrepresented to customers that their funds were segregated, suggesting that customers were protected from risk events such as Tallinex's financial collapse. This representation, which Tallinex posted on its website, was false.

20. In fact, the written disclosure statement prescribed in Regulation 5.5 warns that RFEDs must state that the RFED may commingle customer funds with the RFED's own operating funds, use them for other purposes, and in the event of the RFED's bankruptcy any funds the RFED is holding for the customer, including any amounts owed to the customer, may be treated as an unsecured creditor's claim even if the customer accounts are segregated.

**B.     Conclusions of Law**

**Jurisdiction and Venue**

21. This court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (district courts have original jurisdiction over

civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

22. Venue properly lies with this court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because the Defendant(s) transact business in this jurisdiction and the acts and practices in violation of the Act and Regulations occurred within this District, among other places.

## **VIOLATIONS OF THE COMMODITY EXCHANGE ACT**

### COUNT ONE:
### VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(aa) OF THE ACT, and COMMISSION REGULATION 5.3(a)(6)(i)
**Operating As an Unregistered Foreign Exchange Dealer**

23. By the conduct described in paragraphs 1-22 above, Tallinex solicited or accepted from U.S. non-ECP (retail) customers, orders for leveraged or margined forex transactions and offered to be or was the counterparty such contracts without being registered with the Commission as retail foreign exchange dealer, in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2017).

## COUNT TWO:
## VIOLATION OF SECTIONS 4b(a)(2)(A) and (C) OF THE ACT, and
## COMMISSION REGULATIONS 5.2(b)(1) and (3)
### Fraud by Misrepresentations and Omissions of Material Fact

24. By the conduct described in paragraphs 1-23 above, Tallinex cheated, defrauded, or willfully deceived, or attempted to cheat and defraud, or willfully deceived its customers by, among other things, knowingly or recklessly misrepresenting or omitting material facts including but not limited to, (a) falsely representing that Tallinex is lawfully doing business in the United States; (b) misrepresenting and omitting the likelihood of profit and risk of loss involved in trading forex contracts; (c) falsely and misleadingly representing that customer funds are segregated and protected in the event of Tallinex's financial collapse, in violation of Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A), (C), and Regulation 5.2(b)(1) and (3), 17 C.F.R. §§ 5.2(b)(1) and (3) (2017).

## COUNT THREE:
## VIOLATION OF SECTION 6(c)(1) OF THE ACT, and
## COMMISSION REGULATION 180.1
### Fraud by Use of a Manipulative Device, Scheme, Artifice or Course of Business

25. By the conduct described in paragraphs 1-24, Tallinex falsely represented that it was lawfully doing business in the United States; misrepresented and omitted the likelihood of profit and risk of loss involved in trading their forex contracts; falsely and misleadingly represented the safety of customer funds in the event of Tallinex's financial collapse among other fraudulent and deceptive acts and practices. Tallinex thereby directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, intentionally or recklessly: (1) used or employed, or attempted to use or employ, a manipulative device, scheme, or artifice to defraud; (2) made, or attempted to make, untrue or misleading statements of a material fact or omitted to

state material facts necessary in order to make the statements made not untrue or misleading; or (3) engaged, or attempted to engage, in acts, practices, or courses of business, which operated or would operate as a fraud or deceit upon customers or prospective customers, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Commission Regulation 180.1, 17 C.F.R. § 180.1 (2017).

## COUNT FOUR:
## VIOLATION OF COMMISSION REGULATION 5.5
### Failure to Provide Disclosure Statement

26. By the conduct described in paragraphs 1-25, Tallinex violated Commission Regulation 5.5, 17 C.F.R. § 5.5 (2017), by opening retail forex accounts without providing customers with a written disclosure statement that includes the information required by Commission Regulation 5.5, 17 C.F.R. § 5.5. This information includes:

    (a)    for each of the most recent four calendar quarters during which the counterparty maintained retail forex acounts:

        (i)    the total number of non- discretionary retail forex customer accounts maintained by the retail foreign exchange dealer;

        (ii)    the percentage of accounts that were profitable during the equarter; and

        (iii)    the percentage of such accounts that were not profitable during the quarter.

    (b)    a Risk Disclosure Statement warning of the financial losses that can inccur using leverage, conflicts of interests and other risks. Specifically, RFEDs must disclose in writing, in all capital letters, that:

        (i)    the RFED's trading is not on a regulated market or exchange and customers' funds have no regulatory protection;

        (ii)    because of leverage and other risks, customers can rapidly lose all of their funds;

        (iii)    the RFED, if serving as the counterparty, has a direct financial conflict of interest with the customer because when the customer

loses money trading, the counterparty dealer is making money on such trades;

(iv) the RFED may commingle customers' funds with its own operating funds or use them for other purposes; and

(v) in the event that the RFED becomes bankrupt, funds the dealer is holding for customers, in addition to funds owed to customers whether or not any assets are maintained in separate deposit accounts by the dealer, may be treated as an unsecured creditor's claim.

27. Unless restrained and enjoined by this Court, there is a reasonable likelihood that the Tallinex will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## II.
## ORDER FOR RELIEF

**IT IS HEREBY ORDERED THAT:**

28. The Commission's Motion for Default Judgment[7] against Defendant Tallinex is GRANTED.

**IT IS FURTHER HEREBY ORDERED THAT:**

**A. Permanent Injunction**

29. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Defendant Tallinex is permanently restrained, enjoined and prohibited from directly or indirectly:

a. soliciting or accepting from non-ECP persons or entities, orders for leveraged or margined forex transactions, and offering to be or being the counterparty to such leveraged or margined forex transactions without being registered with the Commission as a retail foreign exchange dealer, in violation of Section

---

[7] Docket no. 33, filed July 6, 2018.

2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Commission Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i)(2017);

b.  cheating or defrauding or attempting to cheat or defraud, or willfully deceiving or attempting to deceive any person by any means whatsoever regarding (i) any futures order or contract made for, on behalf of, or with, any other person, other than on or subject to the rules of a designated contract; (ii) the disposition or execution of any futures order or contract, or (iii) any act of agency performed with respect to any futures order or contact made for, on behalf of, or with, another person, in violation of Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C).

c.  cheating or defrauding or attempting to cheat or defraud any person or willfully to deceive or attempt to deceive any person by any means whatsoever in connection or with retail forex transactions, in violation of Commission Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3);

d.  directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, intentionally or recklessly: (1) using or employing, or attempting to use or employ, a manipulative device, scheme, or artifice to defraud; (2) making, or attempting to make, untrue or misleading statements of a material fact or omit to state material facts necessary in order to make the statements made not untrue or misleading; or (3) engaging, or attempting to engage, in acts, practices, or courses of business, which operate or would operate as a fraud or deceit upon customers or prospective customers, in violation of

Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) and Commission Regulation 180.1, 17 C.F.R. § 180.1, and

e. opening any forex account for a retail custome without providing the customer with a written disclosure statement that includes the following information contained in Commision Regulation 5.5, 17 C.F.R. § 5.5.

30. Defendant Tallinex is also permanently restrained, enjoined and prohibited from directly or indirectly:

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2017) for its own personal account or for any account in which it has a direct or indirect interest;

c. Having any commodity interests traded on its behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017); and/or

g.  Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2017)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017).

**B.    Restitution**

31.  Defendant Tallinex shall pay restitution in the amount of TEN MILLION TWO HUNDRED AND EIGHTY-NINE THOUSAND TWO HUNDRED THREE HUNDRED NINETY-ONE DOLLARS ($10,289,391) ("Restitution Obligation"), plus post-judgment interest. Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

32.  To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendant's customers, the court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall receive restitution payments from Tallinex and make distributions as set forth below. Because the Monitor is acting as an officer of this court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

33.  Tallinex shall make Restitution Obligation payments under this Order to the Monitor in the name "TALLINEX– SETTLEMENT/RESTITUTION Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606

under cover letter that identifies Tallinex and the name and docket number of this proceeding. Tallinex shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

34. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendant's customers identified by the Commission or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part II. C. below.

35. Tallinex shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendant's customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Tallinex shall execute any documents necessary to release funds that it has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

36. The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Tallinex's customers during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and

docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

37. The amounts payable to each customer shall not limit the ability of any customer from proving that a greater amount is owed from Tallinex or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

38. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Defendant Tallinex who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendant to ensure continued compliance with any provision of this Order and to hold Defendant in contempt for any violations of any provision of this Order.

39. To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendant's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**C.  Repatriation of Foreign Funds**

40. To assure payment of restitution as authorized and for the benefit of customers. Tallinex is hereby ordered to repatriate there is good cause to order repatriation of assets it controls, specifically assets held in the name of Tallinex at following accounts:

| | | |
|---|---|---|
| TBI Bank | Bulgaria | Account No. xxx4102 |
| | | Account No. xxx1262 |
| Ceska Sporitelna a.s. | Czech Republic | Account No. xxx6293 |
| | | Account No. xxx6506 |
| | | Account No. xxx5223 |

| | | |
|---|---|---|
| Ceskoslovenska Obchodni Bank AS | Czech Republic | Account No. xxx4596 |
| Capital Bank, Joint Stock Company | Georgia | Account No. xxx6601 |
| SWED Bank | Estonia | Account No. xxx4057 |

**D.     Civil Monetary Penalty**

41.     Defendant Tallinex shall pay a civil monetary penalty in the amount of SIX HUNDRED EIGHTY-ONE THOUSAND, EIGHT HUNDRED AND EIGHTY-EIGHT DOLLARS ($681,888) ("CMP Obligation"), plus post-judgment interest. Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

42.     Defendant shall pay its CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

>   Commodity Futures Trading Commission
>   Division of Enforcement
>   ATTN: Accounts Receivables
>   DOT/FAA/MMAC/AMZ-341
>   CFTC/CPSC/SEC
>   6500 S. MacArthur Blvd.
>   Oklahoma City, OK 73169
>   (405) 954-7262 office
>   (405) 954-1620 fax
>   nikki.gibson@faa.gov

43.     If payment by electronic funds transfer is chosen, Defendant Tallinex shall contact Nikki Gibson or her successor at the address above to receive payment instructions and

shall fully comply with those instructions. Defendant shall accompany payment of the CMP Obligation with a cover letter that identifies Defendant and the name and docket number of this proceeding. Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

### E. Provisions Related to Monetary Sanctions

44. Partial Satisfaction: Acceptance by the Commission of any partial payment of Defendant's Restitution Obligation or CMP Obligation, shall not be deemed a waiver of its obligation to make further payments pursuant to this Order, or a waiver of the Commission/'s right to seek to compel payment of any remaining balance.

### F. Miscellaneous Provisions

45. Notice: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> James McDonald, Division of Enforcement
> Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street, NW
> Washington, D.C. 20581.

Notice to NFA:

> Daniel Driscoll, Executive Vice President, COO
> National Futures Association
> 300 S. Riverside Plaza, Suite 1800
> Chicago, IL 60606-3447

All such notices to the Commission or the NFA shall reference the name and docket number of this action.

46. Change of Address/Phone: Until such time as Tallinex satisfies in full its Restitution Obligation and CMP Obligation as set forth in this Consent Order, Tallinex shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten (10) calendar days of the change.

47. Invalidation: If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding

48. Continuing Jurisdiction of this Court: This court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Tallinex to modify or for relief from the terms of this Order.

49. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendant Tallinex and upon any person under the authority or control of Tallinex and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Tallinex.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Order for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief* forthwith and without further notice.

The Clerk is directed to close the case.

IT IS SO ORDERED on this 9th day of July, 2018.

BY THE COURT:

_____
David Nuffer
United States District Judge